This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 28,165**

**NATHAN TAYLER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**John M. Paternoster, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant Nathan Tayler appeals his conviction for second degree murder. Defendant raises seven issues on appeal: (1) whether the district court erred in admitting evidence of Defendant's prior bad acts, (2) whether the district court erred in ruling that Defendant opened the door to testimony about his invocation of the right to silence, (3) whether the district court erred in excluding a toxicology report on the victim, (4) whether the district court erred in not dismissing his first degree murder charge as a sanction for police misconduct, (5) whether there was sufficient evidence to sustain his conviction, (6) whether the district court erred in denying Defendant's proffered jury instructions, and (7) whether Defendant's trial counsel provided him with ineffective assistance. We affirm the decision of the district court.

**BACKGROUND**

On December 9, 2006, Defendant was at home drinking beer with his neighbor, Rick Decker. Between 10:30 and 11:00 pm, Defendant's girlfriend, Lynette Wesselhoeft (the victim), arrived and joined them. About an hour after the victim arrived, Defendant and the victim began arguing, and the victim hit Defendant over the head with a pair of spurs. Defendant told Decker that he was mad at the victim because she had a new boyfriend.

Defendant and the victim continued arguing while Decker attempted to separate the two. Eventually, the victim agreed to leave and followed Decker outside. Decker

left Defendant's property and went home to perform farm chores. About forty-five minutes later, Decker noticed that the victim's car was still at Defendant's house with its headlights on. Decker drove back to Defendant's house, fearing that there was a problem.

Decker arrived at Defendant's house and found the victim's car running with the door open and lights on. The victim came out of Defendant's house and hurried toward her car. Defendant followed her out of the house and pointed a gun at Decker and the victim. The victim turned as if to go after Defendant. Defendant pushed the victim to the ground onto some machinery. Decker yelled for Defendant to drop the gun and tried to grab Defendant's waist, but Decker slipped and fell to the ground. Decker saw Defendant kneel over the victim and heard a gunshot. Defendant then told Decker that he had shot the victim.

Defendant called 911 and told the dispatcher that he had shot the victim in the neck and killed her. When the officers arrived at Defendant's home, Defendant directed them to the victim's body and told them he had shot her. Defendant also told the officers where the murder weapon was located.

Defendant was arrested and charged with an open count of first degree murder in violation of NMSA 1978, Section 30-2-1(A) (1994) with an enhancement for using a firearm in the commission of the offense, pursuant to NMSA 1978, Section 31-18-16

(1993). The jury found Defendant guilty of second degree murder in violation of Section 30-2-1(B) and found that Defendant did use a firearm in committing the offense.

**EVIDENCE OF DEFENDANT'S PRIOR BAD ACTS**

Defendant makes several arguments about the district court's decision to conditionally admit evidence of Defendant's prior bad acts in the event that Defendant chose to testify. The prior bad acts in question were an incident in which Defendant shot out the victim's bathroom window, another in which he knocked the victim unconscious during a fight, and another in which he attempted to push the victim out of a moving vehicle. The district court ruled that evidence of these acts would be admissible if Defendant's testimony put into issue the question of intent or lack of mistake.

Defendant first argues the evidence of prior bad acts should either have been admitted or excluded in whole, regardless of Defendant's decision to testify, and the district court's decision to admit the evidence conditionally had a chilling effect on Defendant's decision to testify. Second, Defendant argues the evidence should have been excluded because the evidence would necessarily be in the form of inadmissible hearsay. Third, Defendant argues that the district court erred by not properly applying the standard for relevance under Rule 11-403 NMRA. Finally, Defendant argues he

was not provided with adequate notice that the evidence of prior bad acts would be admitted. We address each of these arguments in turn.

**Decision to Conditionally Admit Evidence if Defendant Testified**

We review the admission of evidence for abuse of discretion. *State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Evidence of a defendant's prior bad acts is not admissible if it is used to show that the defendant has a propensity for wrongful action. Rule 11-404(A) NMRA. Such evidence can be admitted for other purposes, including intent and absence of mistake. Rule 11-404(B). Such evidence would still need to be relevant under Rule 11-401 NMRA and could still be excluded under Rule 11-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

In this case, the district court ruled that some evidence of Defendant's prior bad acts was admissible, provided that Defendant's testimony made intent or mistake an

issue. The court noted that Defendant had suggested during cross-examination of other witnesses that the shooting might have been accidental. Intent and lack of mistake were "controverted and thus became a consequential issue in the case." *State v. Niewiadowski*, 120 N.M. 361, 364, 901 P.2d 779, 782 (Ct. App. 1995). As a result, evidence of prior bad acts would be admissible to show Defendant pulled the trigger intentionally and not as a result of a mistake or accident. Rule 11-404(B). Because there is a reasonable basis for determining there was a proper purpose for admitting the evidence of prior bad acts, the district court did not abuse its discretion in conditionally admitting the evidence.

**Form of the Evidence**

Defendant argues that even if the purpose for admitting the evidence was proper under Rule 11-404(B), the district court still erred because the evidence the State would have presented would have been inadmissible hearsay. Since the district court had a reasonable basis for finding that evidence could have been presented without the use of inadmissible hearsay, we disagree. *See Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

The evidence of Defendant's prior bad acts could have either been elicited through the cross-examination of Defendant, or introduced through testimony from Decker or Decker's wife. Defendant's responses to questions about the prior bad acts

would not be hearsay because Defendant would merely be talking about events in the past, not attempting to introduce out-of-court statements. *See* Rule 11-801(A), (C) NMRA (defining hearsay to include only statements made outside of testimony at trial). Any statement that Defendant made to other witnesses would also be admissible against him because they would be an admission of a party-opponent under Rule 11-801(D)(2)(a). Such statements are not hearsay under the definition in the rules. *See* Rule 11-801(D). Since the prior bad acts could have been introduced through admissible non-hearsay evidence, the district court did not abuse its discretion in allowing the State to present such evidence.

**Relevance**

Defendant argues that the evidence of prior bad acts was not relevant because the prior bad acts occurred at a time too remote from the time of the alleged crime and because the probative value of the evidence was substantially outweighed by its prejudicial effect. Defendant cites *Niewiadowski*, 120 N.M. at 363-64, 901 P.2d at 781-82, for the proposition that New Mexico has a bright-line rule that any prior bad acts that occur more than nine days prior to a crime are per se irrelevant. Defendant argues that, because the acts in question in this case occurred more than nine days prior to the murder, the district court erred in admitting them.

The analysis of the probative value of evidence of prior bad acts is a fact-driven

7

inquiry and is not subject to any bright-line rules regarding its temporal relationship to the crime in question. *See State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (noting that determinations of unfair prejudice are fact based and that therefore trial courts have much leeway in making such determinations). In this case, the incidents occurred between a few months to a few weeks before the murder. The evidence that these acts occurred would have been probative on the issue of whether Defendant shot the victim intentionally or by accident. Without the evidence of prior bad acts, the jury would be more likely to believe that the shooting occurred accidentally, which would have negated an element that the State had to prove. It is also not manifestly clear that the evidence would have unfairly prejudiced Defendant when the events directly involved the victim and were probative of his intent with regard to the victim. As a result, we cannot say that the decision to admit evidence of prior bad acts was "clearly untenable or not justified by reason." *Woodward*, 121 N.M. at 4, 908 P.2d at 234 (internal quotation marks and citation omitted). The district court did not abuse its discretion in finding that the probative value of the prior bad acts evidence was not substantially outweighed by its prejudicial effect, and we affirm the district court on this issue.

**Notice**

Additionally, Defendant argues that he was not provided with pretrial notice of

the bad acts evidence. Since Defendant raises this issue for the first time on appeal, we will not address the merits of Defendant's arguments. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked.").

As such, the district court did not abuse its discretion in conditionally admitting evidence of Defendant's prior bad acts.

**TESTIMONY CONCERNING DEFENDANT'S SILENCE**

Defendant next argues that the district court erred in ruling that testimony concerning Defendant's request for an attorney was admissible because Defendant had opened the door to such testimony by implying that Officer Paul Chavez failed to question Defendant when provided an opportunity to do so. Prior to trial, the district court ordered that Defendant's request for an attorney when he was in police custody would not be raised at trial. At trial, Officer Chavez testified about statements Defendant made while Officer Chavez was processing Defendant's belongings at the police station on the night of the murder. These statements had been made voluntarily to Officer Chavez after Defendant had requested an attorney at the police station, which ended Agent Richard Williamson's questioning of Defendant. On cross-examination, defense counsel questioned Officer Chavez's failure to use recording equipment available at the police station in order to record these statements by

9

Defendant. Outside of the presence of the jury, the State requested a ruling that defense counsel had opened the door to testimony about Defendant's invocation of his right to counsel by implying that the police had failed to record Defendant's statements because of their own incompetence. The district court agreed and ruled that the State could raise the issue of Defendant's invocation of his right to counsel in order to provide an explanation for the absence of a recorded interrogation of Defendant. Agent Williamson then testified that Defendant invoked his *Miranda* rights by requesting an attorney and the police did not further question him or record any conversation with him because Defendant's invocation ended their interrogation.

When the facts are not in dispute, a decision to allow the state to refer to a defendant's silence is a legal determination that we review de novo. *See State v. Foster*, 1998-NMCA-163, ¶ 8, 126 N.M. 177, 967 P.2d 852. As a general rule, it is reversible error for the state to reference a defendant's exercise of his right to silence in the presence of a jury. *See State v. Henry*, 101 N.M. 266, 267, 681 P.2d 51, 52 (1984). However, the defense cannot, with impunity, comment on a defendant's silence. *See State v. Ruffino*, 94 N.M. 500, 503, 612 P.2d 1311, 1314 (1980). If the defense comments on a defendant's right to silence, it opens the door for the state to do the same. *Id.*

In this case, defense counsel raised the issue on cross-examination of Officer

Chavez's decision not to interrogate Defendant or record any statements Defendant made on cross-examination. The State's explanation for Officer Chavez's decision was that Defendant had invoked his right to counsel, which effectively precluded any officers from questioning Defendant. Defendant used the State's inability to testify about Defendant's silence as an offensive weapon to create an inference that the police were incompetent in their investigation without allowing the State the opportunity to convince the jury of an alternate explanation. If the State was not allowed to mention Defendant's exercise of his right to counsel, it would have had no explanation for the failure to interrogate or record the statements Defendant made, leaving only Defendant's explanation of an incompetent investigation.

The district court did not err in concluding that Defendant was attempting to raise the issue of his own silence to his advantage, thereby opening the door to the State's evidence. *See Ruffino*, 94 N.M. at 503, 612 P.2d at 1314 (noting that the protection against testimony regarding a defendant's silence does not protect a defendant who raises the issue). The district court determined that Defendant had put the State in a position in which the State could only address Defendant's implications of police misconduct by addressing Defendant's invocation of his right to an attorney. Defendant raised the issue of his own silence, thereby opening the door to the State to present evidence on that issue. We affirm the district court on this issue.

11

**EXCLUSION OF VICTIM'S TOXICOLOGY REPORT**

Defendant contends that the district court erred in excluding a toxicology report of the victim from the autopsy. Defendant argues that the report was not inadmissible hearsay because it falls under the business records exception, public records exception, and Rule 11-807 NMRA residual hearsay exception for statements that have circumstantial guarantees of trustworthiness. We review decisions on the admissibility of evidence for abuse of discretion. *Flores*, 2010-NMSC-002, ¶ 25.

At trial, Defendant cross-examined Dr. Anne Brazey, who had performed the victim's autopsy. During this testimony, Defendant offered a toxicology report into evidence. The State objected on the grounds that the report was inadmissible hearsay because the report had been prepared by an independent laboratory and the report had not been relied upon by Dr. Brazey. The State also objected that the proper foundation had not been laid for the report to be entered into evidence. Defendant argued that the evidence was admissible under the public records exception, under the business records exception, or as a statement made for the purpose of medical diagnosis. Defendant cited *State v. Dedman*, 2004-NMSC-037, ¶ 24, 136 N.M. 561, 102 P.3d 628, *overruled by State v. Bullcoming,* 2010-NMSC-007, 147 N.M 487, 226 P.3d 1, for the proposition that toxicology reports are admissible under the business records and public records exceptions to the hearsay rule. The district court sustained

12

the State's objection on both grounds, ruling that the evidence was inadmissible hearsay and that *Dedman* is limited to cases involving DWI charges and that the proper foundation had not been laid for admitting the record into evidence. The court further held that the report was irrelevant because the timing of the report indicated that it was not probative to Dr. Brazey's determination as to cause of death.

Defendant argues that the district court erred by improperly interpreting *Dedman*. Regardless of the state of the law at the time of the district court's ruling, our Supreme Court has since clarified that toxicology reports, such as the one at issue in this case, do not fall under the public records exception and business records exception to the hearsay rule. *See Bullcoming*, 2010-NMSC-007, ¶ 16; *see also State v. Aragon*, 2010-NMSC-008, ¶ 17, 147 N.M. 474, 225 P.3d 1280. Further, the rationale of our Supreme Court for this determination negates Defendant's residual exception for statements that have a residual guarantee of trustworthiness argument. The Court in *Aragon* determined that "records that are created as a system of recording events or occurrences that have little or nothing to do with the management or operation of [a] business" are not considered "inherently trustworthy." 2010-NMSC-008, ¶ 18 (internal quotation marks and citation omitted).

Although this change occurred after trial, the new holding is retroactively applicable to cases in which the issue was raised and preserved below. *See State v.*

13

*Nunez*, 2000-NMSC-013, ¶ 114, 129 N.M. 63, 2 P.3d 264. Thus, the toxicology report at issue is hearsay that does not fall into any of the exceptions detailed in Rule 11-803 NMRA or the residual hearsay exception of Rule 11-807.

The district court also did not abuse its discretion in excluding the report based on a lack of foundation. Dr. Brazey did not prepare the report, did not work at the facility that prepared the report, and did not rely on the report in forming her opinion as to the cause of death of the victim. As a result, it was reasonable for the court to conclude that the witness was not able to provide reliable testimony concerning the methods used in preparing the report and whether the report was prepared in the normal course of business operations. *See* Rule 11-803(F), (H).

In addition, the district court did not err in determining that the information in the report, the victim's blood alcohol content (BAC), was not relevant. The cause of death was not a disputed issue at trial. Additionally, ample evidence had already been presented indicating that the victim was intoxicated at the time she was shot. This evidence could render the additional evidence of intoxication needlessly cumulative, warranting its exclusion under Rule 11-403. Despite Defendant's contentions, there is no special probative value of BAC in non-DWI cases, such that the report did not offer any special insight into the victim's intoxication. *See State v. Garcia*, 2005-NMCA-042, ¶ 33, 137 N.M. 315, 110 P.3d 531 (holding that BAC evidence, by itself,

is not probative of aggressiveness).

**MOTION TO DISMISS FIRST DEGREE MURDER CHARGE**

Defendant argues that the district court erred in failing to dismiss the first degree murder count on the grounds that the police were negligent in failing to collect possible exculpatory evidence. Defendant argues that the police were negligent in failing to collect evidence relating to Defendant's BAC at the time of the shooting, which would have been probative to his voluntary intoxication defense to first degree murder. Defendant argues that the failure of the police to collect this evidence mandated a determination that the evidence that the police failed to collect would have been conclusive on the issue of voluntary intoxication.

We review the question of whether to dismiss a count as a sanction for police misconduct for abuse of discretion. *See State v. Ware*, 118 N.M. 319, 326, 881 P.2d 679, 686 (1994). A determination that a failure to collect evidence violated a defendant's due process rights requires a two-part showing. "First, . . . the evidence that the [s]tate failed to gather . . . must be material to the defendant's defense." *Id.* at 325, 881 P.2d at 685. Second, in order to determine whether any sanctions are appropriate, the defendant must show that the failure to collect evidence was performed in bad faith or was the result of gross negligence. *Id.* The district court did not abuse its discretion in denying Defendant's motion to dismiss.

15

We cannot say that it was beyond reason for the district court to conclude that the evidence of Defendant's BAC would not have been material to his defense. Defendant argues that evidence of his BAC would have negated the charge of first degree murder. However, Defendant was convicted of second degree murder, to which his voluntary intoxication could not have served as a defense. *See State v. Tapia*, 81 N.M. 274, 276, 466 P.2d 551, 553 (1970). As a result, no amount of evidence of voluntary intoxication would have assisted Defendant's case with regard to the charge of second degree murder. Thus, there was no "reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different." *Ware*, 118 N.M. at 325, 881 P.2d at 685 (alteration in original) (internal quotation marks and citation omitted).

In addition, we note that the analysis of the potential relevance of BAC evidence in this case is similar to the analysis indicated above for the evidence of the victim's BAC. It is unclear that there would be any probative value to assigning a BAC number to Defendant's intoxication when there was already significant evidence that Defendant was intoxicated.

The district court also did not err in determining that there was no gross negligence or bad faith on the part of the investigating officers. In reaching this conclusion, the district court made several factual findings concerning the

16

investigation. In particular, the court found that there was no sign of intoxication observed by the five officers at the scene of the crime and that there were no circumstances existing at the scene that warranted pursuing alcohol testing or investigation procedures. We defer to the district court's factual findings if they are supported by substantial evidence. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

"Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. The district court reviewed the circumstances of Defendant's behavior during the 911 call and at the scene of the crime, along with the evidence presented from the State's attorney that there was no reason for the police to pursue an alcohol investigation. We cannot say that the district court's factual determinations were against the manifest weight of this evidence. In light of these factual determinations, it was within reason for the district court to conclude that the police were not grossly negligent, nor were they operating in bad faith. Given this conclusion, it was appropriate for the district court to deny Defendant's request to dismiss the first degree murder charge as a sanction for investigatory misconduct.

Defendant also questions the police's failure to collect two other pieces of evidence, gunshot residue from the victim's hand and Decker's BAC, for the first time

on appeal. Defendant has failed to preserve his objections on these issues by failing to raise them at trial. *See* Rule 12-216(A). As a result, we will not consider the merits of his arguments as to those pieces of evidence.

**SUFFICIENCY OF THE EVIDENCE**

Defendant next argues that the district court erred in denying his motion for directed verdict on the charges of first and second degree murder based on sufficiency of the evidence. Defendant argues that the evidence presented did not establish that he had the intent to kill necessary for first degree murder and that it did not establish that there was sufficient provocation to warrant a lesser charge of voluntary manslaughter instead of second degree murder. We agree with the district court's decision because there was sufficient evidence for the jury to find against Defendant.

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (internal quotation marks and citation omitted). We review the evidence as a whole and indulge all reasonable inferences in favor of the state in order to ascertain whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]" *Id.* (internal quotation marks and citation omitted). "On appeal, we will not reweigh

the evidence nor substitute our judgment for that of the fact finder provided that there is sufficient evidence to support the verdict." *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181 (internal quotation marks and citation omitted).

In order to prove that Defendant committed second degree murder, the State had to prove that:

1. [Defendant] killed [the victim];

2. [Defendant] knew that his acts created a strong probability of death or great bodily harm to [the victim];

3. This happened in New Mexico on or about the 10th day of December, 2006.

The second element was the only issue at trial. In order to prove that element, the State provided evidence that Defendant admitted to shooting the victim to Decker, the 911 operator, and the police. He also told the police that the victim hit him over the head with spurs, and "that's when [he] did it." He admitted shooting her in the neck and indicated that, although they were fighting, it was no excuse for what he did. In addition, the State presented evidence that Defendant was familiar with firearms and owned several of them. The evidence also showed that the particular firearm used in the shooting required Defendant to pull the hammer back before pulling the trigger in order to fire. Finally, evidence showed that Defendant waited an hour after the victim hit him with spurs before attacking her and that he pushed her to the ground and put

the gun up to her neck despite Decker's attempts to stop Defendant. This evidence is sufficient to conclude that Defendant knew that his acts created a strong probability of death or great bodily harm to the victim.

Defendant also argues that the evidence demonstrated that there was sufficient provocation to warrant a conviction for voluntary manslaughter instead of second degree murder. In reviewing the record for substantial evidence, it is not our task to evaluate whether an alternate hypothesis might plausibly be believed from the evidence presented. *Fuentes*, 2010-NMCA-027, ¶ 13. As a result, we will decline Defendant's invitation to indulge in speculation on this matter.

Defendant contends that the district court erred in denying his motion for directed verdict with regard to the charge of first degree murder. Since Defendant was acquitted on that charge, a ruling in Defendant's favor on this issue would not provide him any relief. The issue is therefore moot. *See State v. Sergio B*., 2002-NMCA-070, ¶ 9, 132 N.M. 375, 48 P.3d 764 ("An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief."). Thus, we will not address the merits of Defendant's arguments on this issue. *See id.* ("As a general rule, appellate courts should not decide moot cases.").

**DEFENDANT'S REQUESTED JURY INSTRUCTIONS**

Defendant argues that the district court erred in denying his proffered jury

instructions with regard to (1) negligent use of a firearm as a lesser-included offense to second degree murder, (2) unlawfulness as an element of murder, (3) the victim as the proximate cause of her own shooting, and (4) the victim's contributory negligence. However, Defendant presents no argument on appeal other than bald assertions that the instructions were wrongfully denied. Defendant does not cite to the record or to any authority in support of these assertions. We will not make Defendant's argument for him. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority[; we] will not do this research for counsel."). We affirm the district court on this issue.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant argues that his convictions should be reversed based on the ineffective assistance of his trial counsel. Defendant argues that his trial counsel failed to provide adequate assistance by (1) failing to request jury instructions for voluntary and involuntary manslaughter, (2) failing to file a motion to change venue due to pretrial publicity, (3) failing to file a motion to continue the trial due to the fact that counsel was not able to interview Decker until a few days before trial, and (4) failing to subpoena the Scientific Laboratory Division (SLD) doctor in order to authenticate the victim's toxicology results.

21

A claim of ineffective assistance of counsel presents a question of law that we review de novo. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. In order to prove that his trial counsel was ineffective, Defendant must show both "that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.* ¶ 36.

**Jury Instructions for Manslaughter Charges**

We will not consider a decision of trial counsel to be ineffective if we "can conceive of a reasonable trial tactic which would explain the counsel's performance." *Id.* ¶ 39 (internal quotation marks and citation omitted). Defense counsel's decision not to offer jury instructions on voluntary and involuntary manslaughter could have served the reasonable purpose of securing an acquittal for Defendant if the jury found the necessary elements for either of the manslaughter charges but not those for murder. This all-or-nothing approach is a decision relating to trial strategy, which we will not second guess on appeal. *See id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 27, 124 N.M. 333, 950 P.2d 776 (recognizing that a decision not to include an instruction for a lesser-included offense might create a lower overall probability of conviction for a defendant). As a result, defense counsel was not ineffective in this decision.

**Change of Venue Motion**

Defendant's arguments concerning the motion to change venue center around potential juror bias based on the number of jurors in the original pool. However, Defendant acknowledges that the jurors who indicated that they could not be impartial due to pretrial publicity were stricken from the pool. Defendant makes no argument that the 31 remaining jurors from which his jury was selected were biased. Defendant fails to cite to any authority or any part of the record on appeal to demonstrate that he suffered actual prejudice as a result of a motion to change venue not being filed. As a result, we will not consider Defendant's arguments. *See In re Adoption of Doe*, 100 N.M. at 765, 676 P.2d at 1330.

**Motion for Continuance**

Defendant argues that defense counsel's failure to file a motion to continue the trial prejudiced Defendant's case because it prevented him from fully briefing pretrial matters, such as the evidence of prior bad acts. Defendant does not make any argument as to what effect additional briefing would have had in the resolution of the issue. As a result, we cannot conclude that Defendant has suffered prejudice as a result of his counsel's failure to move to continue his trial. *See id.*

**Failure to Subpoena SLD Doctor**

Finally, Defendant argues that his counsel was ineffective in not subpoenaing

a SLD doctor who could have laid the foundation for admitting the toxicology results of the victim. The district court, however, excluded the evidence on grounds of relevance as well. Thus, even with the proper foundation, the evidence of victim's toxicology results would not have been admitted at trial regardless of defense counsel's actions. As a result, we cannot conclude "that the deficient performance prejudiced [Defendant's] defense." *Dylan J.*, 2009-NMCA-027, ¶ 36.

**CONCLUSION**

For the foregoing reasons, we affirm the ruling of the district court.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**ROBERT E. ROBLES, Judge**

_____
**LINDA M. VANZI, Judge**