2002-NMCA-070

48 P.3d 764

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**SERGIO B., Child–Appellant.**

**No. 22,252.**

Court of Appeals of New Mexico.

May 20, 2002.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Child was committed to the custody of the Children, Youth and Families Department (CYFD) for two years. After learning that the Juvenile Parole Board (JPB) was considering Child's application for parole, the State filed a motion with the children's court seeking to extend Child's commitment for an additional year. The children's court extended Child's commitment, then "stayed" its own order and placed Child under protective supervision for six months. Child argues that the children's court lacked jurisdiction in the matter because it had notice that JPB was considering early release. In the alternative, Child argues that the State was required to provide him with notice of the specific bases for extending commitment before any hearing on the matter. Child also argues that there was insufficient evidence to justify extending his commitment. The State, in addition to disputing each of these arguments, argues that this case is moot because Child's term of protective supervision has ended.

{2} We hold that the issues raised in this appeal should be decided because they are capable of repetition, yet evading review. Reaching the merits of Child's arguments, we hold that the children's court had jurisdiction to hear the State's motion because JPB had not notified the court of Child's prospective parole. Nonetheless, we hold that there was insufficient evidence to justify extending Child's commitment. We therefore reverse the judgment of the children's court. Because we reverse on that basis, we need not decide whether the State was required to

provide Child notice of the specific grounds it was alleging for extending custody.

## FACTS

{3} In August 1998, the State filed a delinquency petition alleging that Child committed criminal sexual penetration in the first degree (child under 13) and criminal sexual contact of a minor in the third degree (child under 13). Child pleaded guilty to two counts of criminal sexual contact of a minor in the third degree, and the children's court entered a judgment placing Child on probation for two years. After participating in a residential counseling program for a few months, Child skipped school and failed to return to the program. As a result, the children's court revoked Child's probation and ordered him committed to CYFD custody for two years, beginning March 30, 1999. The Court reserved its right to extend Child's commitment if necessary to protect the Child's welfare or public safety, as permitted by the Children's Code. *See* NMSA 1978, § 32A–2–23(D) (1995). In its order of judgment, the children's court instructed CYFD to inform the court of any pending release date.

{4} In response to that instruction, on January 4, 2001, an attorney for CYFD sent the children's court a letter, indicating that JPB had placed Child's case on its February agenda and that CYFD was recommending that Child be released early and allowed to live with his mother in Las Vegas, Nevada. The State, surprised and concerned by CYFD's position, contacted the children's court and indicated that it intended to oppose Child's release. The children's court informed the State that it would have to file a motion requesting a recommitment hearing, because the court did not plan to initiate such hearings sua sponte. The State filed its motion on January 19, 2001. Child objected, arguing that the children's court had no jurisdiction to consider recommitment while JPB was considering parole. The children's court held a hearing on January 30 and decided that it still had jurisdiction, but continued the hearing, because CYFD had not provided the State with Child's case file.

{5} JPB scheduled an interview with Child for February 13. The State sent JPB a letter opposing Child's release, and then informed officials at CYFD that they would be "disobeying the court's order if they went ahead and paroled" Child. CYFD then told Child he could not attend the interview with JPB. As a result, Child attended a hearing at children's court, rather than the scheduled interview with JPB, on February 13. Child's attorney requested that Child be allowed to interview with JPB. The children's court indicated that Child could do so, "as long as they don't release him." The children's court again continued the hearing after learning that CYFD was still refusing to cooperate with the State.

{6} Child never appeared before JPB. The children's court held its third and final recommitment hearing on March 27, three days before Child's term of commitment was set to expire. By this time the State, after finally obtaining Child's case file from CYFD, had changed its position. It now informed the children's court that it was not seeking to keep Child in CYFD custody. Instead, the State asked the children's court to release Child, but place him under protective supervision. The State presented one witness, a social worker from the treatment facility where Child resided during his commitment. The social worker testified that Child had successfully completed his therapy program, was considered a low risk for reoffending, and was not a danger to the community. She also testified that he had earned his GED, had developed job skills, and would have the support of family members in Nevada. She indicated that twelve members of his treatment team had unanimously recommended early release.

{7} The children's court expressed doubt as to its authority to order protective supervision. The court also noted that the State had presented no evidence to justify extending CYFD custody. Nonetheless, the children's court found that it would be in Child's best interest to be under protective supervision during his transition out of CYFD custody. The court ordered Child committed to CYFD custody for an additional year, but then stayed that order and placed the child under protective supervision for six months.

{8} Child appealed the order to this Court. Before this case was fully briefed, the period of protective supervision ended.

## DISCUSSION

### I. Mootness

{9} The State argues that we should dismiss Child's appeal because there is no longer an active controversy in this case, now that Child's term of protective supervision has ended. As a general rule, appellate courts should not decide moot cases. *Gunaji v. Macias*, 2001–NMSC–028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (citing *Mowrer v. Rusk*, 95 N.M. 48, 51, 618 P.2d 886, 889 (1980)). An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief. *Id.* ¶ 9, 618 P.2d 886.

{10} Appellate courts review criminal convictions even after a defendant's term of incarceration ends because of the continuing collateral consequences of a conviction, such as mandatory sentence increases for subsequent offenses, limitations on eligibility for certain types of employment, and voting restrictions. *See State v. Pierce*, 110 N.M. 76, 87, 792 P.2d 408, 419 (1990) (reversing child abuse conviction that had merged with homicide conviction, even though the defendant was serving concurrent sentences, because of the collateral consequences of the second conviction). Child argues that his appeal is not moot because similar collateral consequences flow from the order recommitting him to CYFD custody. He notes that if he is ever convicted of a felony as an adult, the order of recommitment could appear in a pre-sentence report. *See* NMSA 1978, § 32A–2–18(A) (1996). He also argues that he "bears the stigma" of an unjustified order. In federal court, these consequences would be insufficient to justify appellate review. *See Spencer v. Kemna*, 523 U.S. 1, 9, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (declining to review appeals from decisions revoking probation after the defendants' term of incarceration had ended because the defendants could not identify definitive collateral consequences that flowed from the revocation decision). Our courts, however, have established their own mootness standards. *See Gunaji*, 2001–NMSC–028, ¶ 11, 130 N.M. 734, 31 P.3d 1008

(rejecting federal mootness standards). We need not decide whether the collateral consequences of the recommitment order are sufficient to create an actual controversy, because we agree with Child that, under New Mexico law, the issues raised in this case are "capable of repetition[,] yet evad[ing] review." *See id.* ¶ 10 (addressing claims of unfair election procedures after the winning candidate's term of office had expired because the issues were capable of repetition, but would evade review).

{11} The State argues that the doctrine does not apply because this case involves unusual circumstances that are unlikely to reoccur. While it may be unusual for the State and CYFD to have such diametrically opposed views on the disposition of a case, there is always potential for disagreement, and we anticipate that there will be other cases where the jurisdiction of the children's court and JPB overlap. The children's court only has jurisdiction to consider extending a child's custody at the end of a child's commitment period. *See State v. Adam M.*, 2000–NMCA–049, ¶ 10, 129 N.M. 146, 2 P.3d 883. It is likely that children seeking parole will do so toward the end of their commitment terms, after they have gone through treatment. Thus, we think this issue is capable of repetition. Child also argues that the children's court exceeded its authority when it placed Child under protective supervision and that there was insufficient evidence to support the court's judgment. These issues are also capable of repetition. Many children's court cases will involve short-term commitments of one year or less, *see* NMSA 1978, § 32A–2–19(B)(2) (1996), which could expire before the case was fully briefed before this Court or our Supreme Court, and thus these issues would evade review unless this exception was invoked. We agree with Child that we should decide the issues raised in his appeal.

### II. Whether the Children's Court had the Authority to Consider the State's Motion

{12} Child argues that the children's court had no jurisdiction to hear the State's recommitment motion once it learned

that JPB was considering Child's parole application. Child's arguments require us to interpret provisions of the Children's Code. Statutory construction presents a question of law that is reviewed de novo. *State v. Cleve*, 1999–NMSC–017, ¶¶ 7–8, 127 N.M. 240, 980 P.2d 23, *modified on other grounds by State v. Guilez*, 2000–NMSC–020, ¶ 15, 129 N.M. 240, 4 P.3d 1231. In interpreting a statute, courts should ascertain and give effect to the intent of the legislature. *Id.*

{13} The children's court's jurisdiction over juvenile cases terminates once a child has been committed to the custody of CYFD. Section 32A–2–23(A). The children's court, however, has jurisdiction to extend a judgment of long-term commitment for additional one-year periods until the child turns twenty one. Section 32A–2–23(D). The children's court cannot exercise this authority until the end of the term of commitment. *Adam M.*, 2000 NMCA 049, ¶ 10, 129 N.M. 146, 2 P.3d 883. During the term of commitment, the Children's Code vests JPB with the "exclusive power to parole or release" a child who has been committed to CYFD custody. *See* Section 32A–2–23(A)(1). Once JPB notifies the children's court of a child's prospective parole, the court may express its views on the matter, but may take no other action. NMSA 1978, § 32A–7–6(B) (1993). Thus, notice from JPB divests the children's court of its authority to extend a child's recommitment. *See In re Ruben D.*, 2001 NMCA 006, ¶ 15, 130 N.M. 110, 18 P.3d 1063.

{14} In *Ruben D.*, we were asked whether the children's court could recommit a child after JPB had issued a certificate of discharge. *Id.* ¶ 16. We held that because JPB was merely acknowledging the child's scheduled release date, and was not considering early release or parole, the board had not invoked its exclusive jurisdiction. *Id.* ¶ 17. Child argues that this case is distinguishable from *Ruben D.* because JPB was considering early release in this case. We agree with the State, however, that the letter from CYFD was insufficient to divest the children's court of its authority to consider the State's motion. JPB's jurisdiction becomes exclusive only when the board itself notifies the children's court of a prospective parole. In this case, JPB provided no such notice, and CYFD's letter was expressly responding to the court's instructions in its earlier judgment. Therefore, the children's court had jurisdiction to consider the State's motion.

{15} Because JPB had not yet provided notice to the children's court, Child is incorrect in asserting that, but for the State's interference, he could have been released on February 13. The JPB was required to give the children's court thirty days to express its views on Child's prospective parole. Section 32A–7–6(B). Thus, even if the State had not filed its motion, Child's release could have been delayed by the statutory notice period. Nonetheless, we share Child's concern about the actions of the children's court attorneys, particularly their efforts to prevent Child from attending his scheduled interview with JPB. There is no support for the children's court attorney's assertion that CYFD would be in violation of a court order if it continued to recommend that Child be paroled. The Children's Code limits the authority of the children's court to act when JPB has invoked its exclusive authority. *Id.* The Code places no comparable limit on the authority of JPB. The State cannot prevent JPB from acting by filing an unsupported motion and dragging out a hearing over the course of three months. We are not particularly sympathetic to the State's argument that CYFD's recalcitrance in providing the State information caused the delays. While we do not condone CYFD's actions, the State could have avoided the procedural delays by gathering information *before* filing a motion.

{16} We understand the State's concern upon learning that Child would be released. Child committed very serious sexual offenses. There is ongoing debate about the success of treatment for sex offenders. *See* Victor I. Vieth, *When the Child Abuser is a Child: Investigating, Prosecuting and Treating Juvenile Sex Offenders in the New Millennium*, 25 Hamline L.Rev. 47, 71–76 (2001). Nonetheless, the State's concern and its disagreement with CYFD's position does not justify its interference with that agency's authority to make a recommendation or with the Child's right to appear before JPB.

{17} The children's court also could have waited until the board acted—out of deference to the board's authority and the legislature's intent, if not out of statutory obligation—before holding its hearings. There was more than sufficient time after Child's scheduled February 13 interview date to consider the State's motion. As it turned out, the court did not consider the State's motion until six weeks later. The court also could have used its discretion to dismiss the State's motion as unsubstantiated, see Section 32A–2–23(F), with the understanding that the State could refile its motion if it established a good faith basis to argue for extension. Nonetheless, the children's court did have the authority to hold recommitment hearings in the absence of notice of a prospective parole from JPB.

{18} Child also argues the children's court should have dismissed the State's motion because it did not provide notice of the specific allegations justifying the extension of his commitment. This does not appear to be a case where the child was surprised by the State's arguments and had insufficient opportunity to prepare an adequate defense. Because we reverse Child's commitment based on the insufficiency of evidence, however, we need not decide whether the State was required to give notice of the specific basis for extending commitment.

### III. The Court's Order

{19} In addition to challenging the children's court's jurisdiction, Child argues that the court erred in entering its judgment. Child first argues that the State was required to prove the need for recommitment beyond a reasonable doubt. Child notes that recommitment hearings should "proceed ... in the manner provided for hearings on petitions alleging delinquency." Section 32A–2–23(F). Because the State must prove the allegations of a delinquency petition beyond a reasonable doubt, see NMSA 1978, § 32A–2–16(E) (1993), Child argues that the same standard must apply to recommitment hearings. We disagree. Recommitment hearings are essentially dispositional. The standards for adjudicatory hearings do not extend to dispositional hearings.

See Section 32A–2–16(G). We recently rejected the beyond a reasonable doubt standard for proceedings to determine whether a child is amenable to treatment within the juvenile system. See State v. Gonzales, 2001 NMCA 025, ¶ 27, 130 N.M. 341, 24 P.3d 776. We noted that the findings necessary to make such a determination are fundamentally different than the findings necessary to establish the elements of a crime. Similarly, the findings necessary to determine whether a recommitment is necessary to protect the child or public welfare requires "consideration of the child's environment, age, maturity, past behavior, and predictions of future behavior." Id. ¶ 26. Such determinations do not easily lend themselves to proof beyond a reasonable doubt.

{20} In this case, as in Gonzales, we need not decide the appropriate standard of proof. See id. ¶ 37. In this case, however, we need not decide the issue because there was no evidence to support the children's court's order recommitting Child. The court itself acknowledged that there was no evidence to support extending Child's custody, and made no finding that recommitment was necessary. The children's court therefore had no basis to enter a judgment extending Child's commitment.

{21} The State argues that the children's court could consider information presented when Child was first adjudged delinquent. The State relies on case law holding that a trial court may consider information it learned during trial when making a sentencing determination. See State v. Salas, 1999–NMCA–099, ¶ 36, 127 N.M. 686, 986 P.2d 482. The analogy does not hold. The children's court can consider information learned during a child's adjudication when making the initial disposition. An order of recommitment, however, must be based on a determination that it is necessary to protect the child or the public welfare. Section 32A–2–23(D). This necessarily requires a review of Child's progress during his term of commitment. The acts that justified commitment in the first place cannot provide the sole basis for extending that commitment. See Adam M., 2000–NMCA–049, ¶ 10, 129 N.M. 146, 2 P.3d 883.

{22} The State also argues that, even if there was insufficient evidence to extend Child's commitment, there was sufficient evidence to support the children's court ultimate judgment placing Child under protective supervision. During the recommitment hearing, the State emphasized that Child was facing a potentially difficult transition. Child was set to be released into society after three years of custody within intensive therapy programs. He was moving to a new state and to reestablishing his relationship with his mother, which had been difficult at times. The State argued that protective supervision would help Child through these adjustments. The children's court agreed, and entered its order to achieve these ends.

{23} We do not agree, however, that the children's court could enter a baseless order as a means to effectuate a different end. The children's court can only enter an order extending a child's custody in accordance with the Children's Code, i.e., if it makes a finding that the extension is necessary to protect the welfare of the child or the public interest. In this case, the children's court made no finding that an additional term of commitment was necessary, and there was no evidence to support such a finding even if one had been made. Therefore, the judgment extending Child's commitment must be reversed.

## CONCLUSION

{24} We reverse the judgment of the children's court.

{25} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.