This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                        **No. 33,249**

**PATRICIA GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellee

McGraw & Strickland, LLC
Margaret Strickland
Las Cruces, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}     This case is before us on remand from our New Mexico Supreme Court to address arguments raised by Patricia Garcia (Defendant) that were not addressed in our original opinion filed on June 30, 2015. *See State v. Garcia* (*Garcia I*), 2015-NMCA-094, ¶¶ 1, 30, 356 P.3d 45, *rev'd*, *State v. Garcia* (*Garcia II*), 2016-NMSC-034, ¶¶ 1, 28, 384 P.3d 1076. Defendant, a fifty-two-year old teacher, was originally convicted of fraud in violation of NMSA 1978, Section 30-16-6 (2006) (Fraud), and computer access with the intent to defraud or embezzle in violation of NMSA 1978, Section 30-45-3 (2006) (Computer Fraud). Defendant induced the victim, Page Kent (Kent), an eighty-four-year-old widower, into believing that she was his loving partner and thereby, gained access to his bank accounts and depleted over $50,000. *Garcia II*, 2016-NMSC-034, ¶¶ 1-2, 5-7, 10. On appeal, this Court held there was insufficient evidence to establish that Kent "relied on Defendant's deception about her relationship and [marital] status" when he allowed her access to his bank accounts, and we reversed both convictions. *Garcia I*, 2015-NMCA-094, ¶¶ 1, 14, 30. "The State sought certiorari review only with respect to [Defendant's F]raud conviction." *Garcia II*, 2016-NMSC-034, ¶ 1.

{2}     Our Supreme Court reversed Defendant's Fraud conviction and did not address the conviction for Computer Fraud because "the State did not seek certiorari review of [this Court's] reversal of [Defendant's] conviction for Computer [Fraud] in

2

violation of Section 30-45-3." *Garcia II*, 2016-NMSC-034, ¶¶ 1, 27-28. Effectively, our Supreme Court only reinstated Defendant's conviction for Fraud and did not address the reversal of Defendant's conviction for Computer Fraud. As a result, the remand to this Court is limited to Defendant's remaining issues that were not addressed in *Garcia I* and relate to Defendant's Fraud conviction. *Id.* ¶ 28; *see State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22, 145 N.M. 769, 205 P.3d 816 (recognizing that where this Court reverses the decision of the district court, our opinion "constitutes the law of the case" and is binding).

**{3}**     As to Defendant's remaining arguments, we hold that sufficient evidence exists to support Defendant's conviction for Fraud. Additionally, we hold that there was no violation of Defendant's due process rights regarding pretrial notice and any alleged vagueness in associating the specific bank transactions with the two charges Defendant faced at trial. We do not address Defendant's other arguments regarding double jeopardy and restitution because they are now moot as a result of this Court's previous reversal of Defendant's conviction for Computer Fraud.

**BACKGROUND**

**{4}**     In 2010, Kent, who was recently widowed and diagnosed with Parkinson's

disease, met Defendant at a post office in Columbus, New Mexico.[1] At the time, Kent had no relatives in New Mexico. At their first meeting, Kent asked Defendant if she was married. Defendant told Kent she was not married but that she had been several times and was currently divorced.

{5}     Defendant and Kent formed a close relationship in which Defendant visited Kent for a few hours several times a week. Defendant told Kent that she would take care of him, including taking him to doctor appointments and the hospital. Kent came to think of her as his girlfriend and partner, and he described her as such. Although Defendant was not his "lover," he purported to have a romantic interest in her. Defendant feigned an amicable relationship with Kent, and having gained his trust, Defendant asked Kent if she could use his Wells Fargo bank account. By October 2010, Defendant had transferred funds from Kent's account to her own. On December 15, 2010, Kent added Defendant as a joint owner on his checking and savings accounts. Kent believed it would be easier for Defendant's "bookkeeping" and to replace money she had taken. Defendant routinely transferred funds from Kent's accounts to her own. Defendant did not inform him how much she took, and he did not know the amounts until he received his bank statement each month.

---

[1]We provide a shorter recitation of the facts because they are known to the parties and were fully described in both of the previous opinions. *See generally Garcia II*, 2016-NMSC-034, ¶¶ 1-14; *Garcia I*, 2015-NMCA-094, ¶¶ 1-13.

4

{6} In January 2011, Defendant married Gerardo Marquez (Marquez). Defendant did not tell Kent that she was in a relationship with Marquez or that she had married him. In May 2011, when Kent first met Marquez, Defendant introduced Marquez as her "gay friend," not as her spouse.

{7} At some point in 2011, a representative from Wells Fargo, concerned with the activity on his accounts, contacted Kent regarding his banking activity. As a result, Kent asked Defendant to curtail her spending. In May and June 2011, at the bank's prompting, Kent closed his accounts, on which Defendant was a joint owner, and opened new ones. However, Kent added Defendant as a beneficiary of his checking and savings accounts, in October 2011, after she convinced him she would be careful. In late 2011 or early 2012, a Wells Fargo representative from the Elder Abuse Department sent a report to New Mexico Adult Protective Services. The report was referred to a case worker who contacted Kent and spoke with him about Defendant's activities on his bank accounts.

{8} In late January or early February 2012, Marquez and Defendant separated, and Marquez informed Kent that they had been married in 2011. Marquez also informed Kent of Defendant's "suspicious activity" on Kent's bank accounts. Kent described Defendant's marriage as "very pertinent" and shortly after learning of it, he suspended all contact with her. On February 18, 2012, Kent removed Defendant from his bank

5

accounts and subsequently on February 21, 2012, submitted an affidavit to Wells Fargo claiming online fraud. In the affidavit, Kent reported that Defendant had gained access to his accounts by manipulation and convincing him to trust her. In total, Defendant had depleted at least $52,000 from Kent's bank accounts. On June 20, 2012, the State filed a criminal information against Defendant, alleging one count of Fraud and one count of Computer Fraud, and a jury convicted her on both counts. Defendant was sentenced to a term of nine years for each count, and the district court ordered Defendant to pay $53,800 in restitution.

**DISCUSSION**

{9} Defendant made four arguments that must still be addressed on remand. First, Defendant presented two additional arguments regarding whether there was sufficient evidence to support her convictions: (1) any misrepresentation Defendant made was not material to any specific request for money and therefore, was not a means by which she convinced Kent to give her money; and (2) false statements "about the degree and exclusivity of affections in the context of romantic interest are not properly the basis of [F]raud charges." Second, Defendant argued that the convictions for both Fraud and Computer Fraud violated the prohibition against double jeopardy and merger. Third, Defendant argued that due process required a more definite statement of the facts prior to and during the trial. Fourth, Defendant argued that due process at

6

the sentencing phase of her trial required a restitution hearing.

**{10}** However, we need not address Defendant's second and fourth arguments because the reversal of Defendant's conviction for Computer Fraud in *Garcia I* stands and remains binding. *See UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22 (applying the law of the case doctrine in the context of an appeal and the binding effect of the mandate to the lower court); *State v. House*, 2001-NMCA-011, ¶ 10, 130 N.M. 418, 25 P.3d 257 (recognizing the doctrine of law of the case applies "where a matter has been specifically ruled upon in a prior and final appellate proceeding"). As a result, Defendant's double jeopardy and merger arguments are rendered moot. *See State v. Rojo*, 1999-NMSC-001, ¶ 35, 126 N.M. 438, 971 P.2d 829 (recognizing that the reversal of one of the defendant's relevant two convictions makes it unnecessary to reach the question of whether the defendant's right to be free from double jeopardy was violated); *State v. Sergio B.*, 2002-NMCA-070, ¶ 9 132 N.M. 375, 48 P.3d 764 ("As a general rule, appellate courts should not decide moot cases. An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief." (citation omitted)). Additionally, we need not address Defendant's due process argument regarding her entitlement to a restitution hearing because restitution must be redetermined by the district court. *See State v. Ellis*, 1995-NMCA-124, ¶¶ 10-11, 15, 120 N.M. 709, 905 P.2d 747 (specifying that restitution must be

limited by and directly related to those criminal activities for which the defendant is convicted).

## I. Sufficient Evidence to Support Defendant's Conviction for Fraud

{11} We could read our Supreme Court's decision in *Garcia II*, 2016-NMSC-034, to be a global holding that there was sufficient evidence, as to all elements of the offense, to support Defendant's conviction for Fraud. However, as that decision was limited to the reversal of our previous opinion in *Garcia I*—that there was only insufficient evidence regarding the element of reliance—we shall fully address Defendant's remaining arguments regarding the sufficiency of the evidence of Fraud.

{12} In reviewing for sufficiency of the evidence, we review the evidence in the light most favorable to the verdict "to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to [the] conviction." *State v. Hornbeck*, 2008-NMCA-039, ¶ 33, 143 N.M. 562, 178 P.3d 847 (internal quotation marks and citation omitted). We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). Our review is deferential to the jury's findings because an appellate court does not have the same exposure to

the evidence and witnesses as the jury at trial. *See id.*

## A.    Defendant's Misrepresentations Made to Kent Were Material

{13}    Defendant argues that, even assuming "Kent did rely on [Defendant's] claimed misrepresentation of her marital status, it was not material in that there is no evidence the false statement was given as an explanation in full or in part for any particular requests . . . for money." This "materiality" argument has been presented as a sufficiency of the evidence claim that can be addressed for the first time on appeal. *See State v. Clemonts*, 2006-NMCA-031, ¶ 10, 139 N.M. 147, 130 P.3d 208 ("[This Court has] held that the question of sufficiency of the evidence to support a conviction may be raised for the first time on appeal." (internal quotation marks and citation omitted)). Therefore, we proceed to address the merits of Defendant's argument.

{14}    As support of this "materiality" argument, Defendant relies on *State v. Stettheimer*, for the proposition that a misrepresentation must be both material and relied upon in order to be fraudulent. 1980-NMCA-023, ¶ 16, 94 N.M. 149, 607 P.2d 1167. An analysis of materiality was not developed or explained in *Stettheimer,* and therefore, it is of minimal benefit to the present case. *Id.* However, our Supreme Court has taken the opportunity to more thoroughly address the issue of a statement's materiality in the context of a third party's reliance upon that statement. *See Tsosie v. Found. Reserve Ins. Co.*, 1967-NMSC-095, ¶¶ 8-14, 77 N.M. 671, 427 P.2d 29

9

(involving materiality and reliance in the context of statements made in an insurance contract dispute). In *Tsosie*, our Supreme Court explained that "[a] representation or concealment of a fact is *material* if it operates as an inducement to the [other party] to enter into the contract, where, except for such inducement, it would not have done so[.]" *Id.* ¶ 26 (Oman, J., specially concurring) (emphasis added) (internal quotation marks and citation omitted). Accordingly, Defendant argues that the misrepresentations regarding her marital status were immaterial to the Fraud charge because they were not made to induce Kent into giving her money. We interpret Defendant's argument to focus upon *her* intentions when she made the misrepresentations about her marital status.

{15}     We determine that Defendant's misrepresentations about her marital status were material to the Fraud charge because a jury could reasonably infer that they were made to induce Kent into giving her money, and Kent acted based upon her misrepresentation. Our Supreme Court has recognized that issues regarding fraudulent intent are normally proved through the presentation of circumstantial evidence. *See Sauter v. St. Michael's Coll.*, 1962-NMSC-107, ¶ 10, 70 N.M. 380, 374 P.2d 134 (recognizing that "fraud is peculiarly a wrong of secrecy and circumvention, and is to be traced, not in the open proclamation of the wrongdoer's purpose, but by the indications of covered tracks and studious concealments" (internal quotation marks

10

and citation omitted)). "The intent with which an act is done is known only to the person who does it and can only be proved by circumstances unless [s]he admits it [her]self." *Id.* ¶ 11 (internal quotation marks and citation omitted)). As a result, "[a] defendant's knowledge or intent generally presents a question of fact for a jury to decide." *State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820.

**{16}** In this case, it is not disputed that Defendant made misrepresentations regarding her marital status and romantic interest to Kent. Kent asked about Defendant's marital status at their first meeting. *Garcia II*, 2016-NMSC-034, ¶ 3. Later, when Defendant married Marquez, she did not tell Kent the truth about her marriage. *Id.* ¶ 8. Defendant also actively tried to hide her relationship with Marquez and introduced him as her " 'gay friend' " in order to deceive Kent in May 2011. *Id.* Furthermore, Kent testified that the ultimate disclosure of Defendant's marriage was " 'very pertinent' " to their relationship and he took action with his accounts at Wells Fargo when he learned of it. *Id.* ¶ 10. Thus, there was sufficient circumstantial evidence in the record for the jury to reasonably infer that Defendant's intentional misrepresentations to Kent were both material when they were made and also relied upon by Kent when he gave Defendant money and unrestricted access to his money. *See id.* ¶ 22 ("[T]he jury was permitted to infer that Kent's willingness to allow [Defendant] access to his accounts was grounded on the misrepresentation that she was his loving partner.").

**B.    Misrepresentations in the Context of Romantic Interest Are a Proper Basis for Fraud**

{17}    Defendant argues that the district court erred in finding sufficient evidence of Fraud because false statements regarding romantic interests and affections are not the proper basis of Fraud charges. As support for this argument, Defendant cites both the right to free speech protected by the First Amendment and the due process right to privacy relating to marriage and familial relationships under the Fourteenth Amendment of the United States Constitution.

{18}    It is unclear from Defendant's brief in chief whether her argument pertains to an evidentiary or constitutional issue. Insofar as Defendant argues there was insufficient evidence, this issue has been fully analyzed and found unpersuasive by us in this opinion and by our Supreme Court. *See Garcia II*, 2016-NMSC-034, ¶ 1. Alternatively, if Defendant is attempting to raise a constitutional issue, her briefing is undeveloped. *See State v. Vento*, 2012-NMCA-099, ¶ 28, 286 P.3d 627 (recognizing that this Court will not review an unclear or undeveloped constitutional argument that would "require us to guess at what a party's arguments might be" (alteration, internal quotation marks, and citation omitted)). Furthermore, we concur with the analysis set forth in the State's answer brief that appropriately distinguishes the United States

Supreme Court case law cited by Defendant.[2] This Court is not compelled to address this constitutional argument any further. *See State v. Duttle*, 2017-NMCA-001, ¶ 15, 387 P.3d 885 ("For this Court to rule on an inadequately briefed constitutional issue would essentially require it to do the work on behalf of [the d]efendant[,] . . . reminding counsel that the appellate courts are not required to do their research[.]" (citation omitted)).

{19}     Finally, Defendant argues that "any false statement or deception by a party to a romantic relationship could give rise to fraud charges if the deceiver subsequently received anything of value from the deceived." We disagree that this case will open the door to a flood of fraud prosecutions in cases involving romantic relationships. *Cf. Flores v. Flores*, 1973-NMCA-011, ¶¶ 11-13, 84 N.M. 601, 506 P.2d 345 (addressing liability for intentional torts by one spouse against the other and rejecting an open-the-floodgates argument that did not appear to have developed in any other jurisdiction). In this case, the jury determined that Defendant was guilty of Fraud, and our Supreme

---

[2]Defendant cites to *United States v. Alvarez*, 567 U.S. 709 (2012), challenging a content-based restriction on free speech, and *Lawrence v. Texas*, 539 U.S. 558 (2003), challenging a Texas statute criminalizing sexual conduct between two persons of the same sex, for the propositions that Defendant's conduct was protected by the First Amendment freedom of speech and her right to privacy under the Fourteenth Amendment's Due Process Clause. However, Defendant does not adequately explain how these cases are applicable to her case. Merely providing a summary that describes the rights protected under *Alvarez* and *Lawrence* is insufficient for us to determine that Defendant's Fraud conviction is protected by these fundamental rights.

13

Court agreed that the evidence was sufficient to support the conviction. *Garcia II*, 2016-NMSC-034, ¶ 1. We are satisfied that, where sufficient evidence does exist, a fraud charge can be filed even though the parties are involved in a romantic relationship.

**II.     The Presentation of Facts at Trial Did Not Violate Due Process**

{20}     Defendant argues that her due process right to "adequate notice of the charges against her required that the State provide her with notice as to which transactions are alleged to have been fraudulent, and to which count they referred." "[The appellate courts] review questions of constitutional law and constitutional rights, [including] due process protections, de novo." *State v. Tafoya*, 2010-NMCA-010, ¶ 7, 147 N.M. 602, 227 P.3d 92 (internal quotation marks and citation omitted).

{21}     Defendant argues that the "general vagueness of the allegations in the complaint, at trial, . . . the complaining witnesses' failure to address any transaction specifically, [and] the voluminous discovery sans explication prevented her from having an adequate defense." However, the State has broad discretion to charge a single count for an ongoing pattern of conduct. *See State v. Altgilbers*, 1989-NMCA-106, ¶ 38, 109 N.M. 453, 786 P.2d 680. Here, the State chose to charge Defendant with one count of Fraud and one count of Computer Fraud based upon a single, continuing pattern of conduct that occurred between October 10, 2010 and February

14

13, 2012. The pattern of conduct alleged in the complaint, as well as in the jury instructions, was not so vague as to prevent Defendant from presenting an adequate defense to unitary fraud-based crimes that were alleged to have occurred over a specific period of time. *See State v. Gurule*, 1997-NMCA-001, ¶¶ 14, 19, 90 N.M. 87, 559 P.2d 1214 (recognizing that a defendant may be charged and tried on a single offense for multiple instances of similar conduct, even where the facts and proof might have been alleged as separate offenses). As a result, we conclude that the allegations in the complaint and the evidence at trial were not so vague as to violate due process.

{22} Furthermore, the State offered the monthly bank statements belonging to Defendant and Kent as evidence of the fraudulent transfers. The monthly bank statements introduced at trial were no more than forty pages total, and testimony was presented as to each transaction—the date, amount, and manner in which the money was removed from Kent's accounts—by the Wells Fargo bank manager and an investigator for the district attorney's office. Defendant's contention that the complaining witnesses failed to address the transactions specifically or that the evidence was so voluminous as to prevent her from mounting an adequate defense is not supported by the record.

{23} Defendant also argues that the State should have provided her with notice as to

which transactions were alleged to have been fraudulent and to which count each alleged transaction referred. All of the relevant bank statements were provided to Defendant prior to trial. It is also sufficiently clear from Kent's initial affidavit to Wells Fargo identifying what money was allegedly transferred to Defendant's personal accounts or withdrawn by Defendant at an ATM. The bank statements, Kent's affidavit, as well as the testimony at trial, also specified which withdrawals listed on the bank statements were effectuated by an online transfer. As such, the evidence available to Defendant prior to trial was sufficiently clear regarding which bank transactions would go to either one or to both counts.

{24}     Finally, Defendant relies upon *Tafoya*, 2010-NMCA-010, in support of the argument that the lack of specificity in the charging documents and evidence violated her right to due process. We are not persuaded. In *Tafoya,* the defendant argued that his right to due process was violated by the fact that "the charges were not sufficiently specific to provide him with adequate notice and [the] opportunity to defend himself[.]" *Id. ¶* 1. The defendant was convicted of four counts of first degree criminal sexual penetration of a minor (CSPM) under the age of thirteen. *Id.* This Court held that the evidence presented at trial did not relate to specific instances of criminal conduct. *See id. ¶* 24 ("At trial, [the child] only described a pattern of vaginal CSPM and a pattern of anal CSPM[,] then [also] said that each happened lots of times,

without relating any act to a specific incident."). As a result, this Court reversed the undifferentiated counts of CSPM but upheld the defendant's convictions for two counts of CSPM based upon the two distinguishable patterns identified in the charges. *Id.* ¶¶ 24, 30. Here, Defendant's charges and resulting convictions are akin to those upheld by *Tafoya.* Defendant was charged with two distinguishable crimes based on a course of fraudulent conduct that led to numerous specific withdrawals from Kent's bank accounts by Defendant. We therefore see no support in *Tafoya* for Defendant's arguments alleging a violation of due process. *See id.* ¶ 30 ("A defendant's distinguishable charges may be based on various distinct incidents or may be based on a general allegation of wrongful conduct that continually occurred.").

**III.  Defendant's Remaining Arguments**

{25}     In light of our reversal of Defendant's conviction for Computer Fraud, we also remand Defendant's remaining Fraud conviction to the district court for further proceedings to correct the original judgment and the sentence that was imposed, as well as re-address the calculation of restitution based solely on Defendant's Fraud conviction. *See Ellis*, 1995-NMCA-124, ¶ 15 (determining the restitution must be confined to the criminal charges to which a defendant is convicted). Defendant's restitution argument is also rendered moot at this time. *See Sergio B.*, 2002-NMCA-070, ¶ 9 (holding that this Court will not address controversies where

it cannot grant any actual relief).

**CONCLUSION**

{26}    On remand, we affirm Defendant's conviction for Fraud, we recognize our previous reversal of Defendant's conviction for Computer Fraud in *Garcia I*, and we remand this matter to the district court for further proceedings consistent with this opinion, including the need to address re-sentencing and restitution on remand.

{27}    **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**M. MONICA ZAMORA, Judge**

18