This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                  **NO. 34,119**

**JULIAN MALDONADO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Michael E. Martinez, District Judge Pro Tem**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     Defendant Julian Maldonado completed his probation in March 2016 but nonetheless appeals a probation term that prohibited him from using medical marijuana, even though he had a valid medical marijuana card. Defendant also appeals his probation revocation on the grounds that the district court abused its discretion by excluding a defense witness's testimony at the probation violation hearing. Finally, Defendant contends that his attorney provided ineffective assistance of counsel at the probation violation hearings. Because we conclude that Defendant's appeal is moot as to the first two issues, we do not address the merits of those arguments. We further conclude that Defendant's attorney did not provide ineffective assistance of counsel.

**BACKGROUND**

{2}     This appeal arises from charges filed against Defendant in 2010. Defendant pleaded guilty to two counts of child abuse pursuant to a plea and disposition agreement. Defendant's six-year sentence was suspended, and he was placed on five years of supervised probation. The conditions of probation required, in part, that: (1) Defendant not violate any state laws; (2) he not "buy, sell, consume, possess or distribute any controlled substances . . . except those legally prescribed"; and (3) he report any arrest or charge to his probation officer. In 2012, Defendant's probation was revoked and reinstated due to four probation violations, including a drug violation. The State's violation report stated that, during a search of Defendant's motel room, officers found a baggie of illegal mushrooms in a sealed medical marijuana

2

container and a scale in Defendant's possession. Defendant subsequently tested positive for THC, opiates, and cocaine. In the report, Defendant's probation officer expressed concern that Defendant was selling his medical marijuana because the drug tests kept coming out clean for marijuana even though he claimed to be a daily user. Based on another incident in May 2013, the State moved to revoke Defendant's probation for violating a condition of his probation—breaking a state law—after he was charged with aggravated battery against a household member.

{3} The district court held several probation violation hearings following the May 2013 incident. The initial hearing occurred May 30, 2013, but the full hearing was rescheduled numerous times for various reasons. Pursuant to Rule 5-805(I) NMRA, parties to probation violations "shall exchange witness lists and disclose proposed exhibits no later than ten (10) days after the initial hearing." However, at the first full hearing on November 14, 2014, the State alerted the district court to the fact that Defendant's attorney, Daniel M. Salazar, had not produced a witness list, although he indicated he intended to call a witness who was present during the aggravated battery incident and who would corroborate Defendant's version of events. Salazar explained that he did not give prior notice of the witness because he was out of town and was not "certain we would be able to get him here anyway." Salazar also admitted, "I didn't want to do a lot of work if the witness wasn't going to show up anyway." The district

3

court orally ordered Salazar to make his witness available to the State for interview by the time of the next hearing in two weeks.

{4} Although Salazar filed a witness list naming only one witness the day before the next hearing, Salazar did not show up to the hearing, apparently because he had a conflicting personal appointment and was unable to get to court because of snow. The district court ruled that Defendant's witness would not be allowed to testify because the deadline to make the witness available for interview had expired. Defendant, who was present at the hearing told the court, "I don't know what my lawyer is doing." In response, the district court said, "That's between you and your lawyer. I gave deadlines. They were not met."

{5} Salazar conceded at a subsequent hearing that the State emailed him to set up an interview but that he never responded to the State's request. Salazar's explanation was that, when he checks his email somewhere other than the office, "I have nobody to turn to and I don't always get back to doing what I need to. And to that extent, . . . that is my fault because I didn't get back to him." The district court reaffirmed its prior decision and ruled that the witness would not be allowed to testify because the witness was not made available for interview.

{6} Defendant's probation was subsequently revoked in a March 27, 2014 order, and Defendant was sentenced to a term of 240 days of incarceration. After the period of incarceration was completed, Defendant's probation was reinstated with two

4

additional conditions: (1) not having any contact with the alleged victim of the aggravated battery, and (2) not using medical marijuana, even with a legal medical marijuana card. Defendant completed his probation in March 2016.

**{7}** Defendant filed a pro se motion for reconsideration on April 28, 2014, and claimed, in part, that his counsel was ineffective because Salazar "did nothing to get [the witness] on the stand [and] was a no show." Defendant also stated that "[i]t is in my best interest to have my medical cannabis card. The only medication that controls my violent behavior." The district court denied Defendant's motion without providing any reasons for its denial. In addition, Defendant filed a pro se petition for writ of habeas corpus with the district court on August 6, 2014, and among other things, alleged that he had "insufficient counsel." The district court denied Defendant's habeas petition on the ground that it did not state a basis for the requested relief.

**{8}** Defendant filed a pro se notice of appeal in this Court on June 12, 2014. His attorney, Salazar, did not timely file either a notice of appeal or docketing statement on behalf of his client, contrary to Rules 12-201(A)(1)(b) and 12-208(B) NMRA. Instead, Salazar filed the notice of appeal on August 8, 2014, more than four months late, and a docketing statement March 26, 2015, almost a year after the final order and only after this Court ordered him to do so at a show cause hearing. We note that this Court held Salazar in contempt for failing to timely file the docketing statement and

5

sanctioned him $2,500. Subsequently, the Public Defender's Appellate Division secured private counsel for Defendant for purposes of this appeal.

**{9}** Defendant presents three substantive arguments on appeal: (1) the probation term prohibiting the use of medical marijuana was an illegal and unreasonable term; (2) the district court abused its discretion in excluding Defendant's witness; and (3) Salazar provided ineffective assistance of counsel for, among other things, failing to schedule the witness for interview, which prejudiced Defendant.

**DISCUSSION**

**Mootness**

**{10}** Before addressing the merits of Defendant's case, because Defendant has completed his probation, we must first decide whether Defendant's appeal is moot. This Court does not address hypothetical issues that will have no effect on the resolution of a case. *See State v. Ordunez*, 2012-NMSC-024, ¶ 22, 283 P.3d 282 ("It is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." (alteration, internal quotation marks, and citation omitted)). "An appeal is moot when no actual controversy exists, and an appellate ruling will not grant the appellant any actual relief." *State v. Segura*, 2014-NMCA-037, ¶ 18, 321 P.3d 140 (internal quotation marks and citation omitted).

{11}	However, well recognized exceptions to the mootness doctrine permit an appellate court to review moot cases that "present issues of substantial public interest or which are capable of repetition yet evade review." *State ex rel. Children, Youth & Families Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 14, 141 N.M. 299, 154 P.3d 674. "A case presents an issue of substantial public interest if it involves a constitutional question or affects a fundamental right such as voting." *Republican Party of N.M v. N.M. Taxation & Revenue Dep't*, 2012-NMSC-026, ¶ 10, 283 P.3d 853. In order for an issue to be capable of repetition yet evading review it must be likely to arise in a future controversy, and under New Mexico mootness law, unlike its more restrictive federal counterpart, the parties' identities are irrelevant. *Gunaji v. Macias*, 2001-NMSC-028, ¶ 11, 130 N.M. 734, 31 P.3d 1008; *see Garcia v. Dorsey*, 2006-NMSC-052, ¶ 16, 140 N.M. 746, 149 P.3d 62 (explaining that an appellate court may hear the merits of a moot issue, even if the specific parties are unlikely to contest the issue in a future case, if the issue is capable of repetition in a future lawsuit with different litigants). Additionally, an issue may evade review if it is unlikely to come before an appellate court in the future. *See Gunaji*, 2001-NMSC-028, ¶ 10 (explaining that an issue involving an election contest may evade review because the contestants terms of office may expire before an appellate court reviews the issue). Our review of moot cases that raise an issue either of substantial public interest or capable of repetition yet evading review is discretionary. *See Cobb v. State Canvassing Bd.*, 2006-NMSC-034,

¶ 14, 140 N.M. 77, 140 P.3d 498 (noting that appellate courts "may review moot cases" that fall within at least one of the two exceptions).

{12}     Furthermore, a criminal appeal is not moot even after a defendant's term of incarceration ends, where the conviction has "continuing collateral consequences . . . , such as mandatory sentence increases for subsequent offenses, limitations on eligibility for certain types of employment, and voting restrictions." *State v. Favela*, 2013-NMCA-102, ¶ 13, 311 P.3d 1213 (internal quotation marks and citation omitted). To establish collateral consequences a defendant must make a showing that potential collateral consequences could flow from the district court's decision. *See State v. Wilson*, 2005-NMCA-130, ¶ 14, 138 N.M. 551, 123 P.3d 784 (agreeing that the appeal was moot because the defendant could not prove the existence of collateral consequences and had already served his full sentence).

**Prohibition of Medical Marijuana as a Probation Term**

{13}     As we have noted, Defendant completed his term of probation in March 2016. Thus, as a practical matter, Defendant's appeal is moot because no ruling from this Court will afford Defendant any actual relief from any term of probation or incarceration already served. *Cf. Garcia*, 2006-NMSC-052, ¶¶ 2-3, 18 (concluding that a defendant's claim was not moot and "remain[ed] a live controversy" because the alleged error that occurred during a prison disciplinary hearing impacted the defendant's current term of incarceration). Nonetheless, Defendant argues that

8

prohibiting the use of medical marijuana was an illegal and unreasonable probation term and that we should exercise discretionary review of his case because the probation term is (1) is an issue of substantial public interest, and (2) capable of repetition yet evading review. We conclude otherwise.

{14} First, with respect to Defendant's contention that the issue is of substantial public interest, Defendant's sole argument on appeal is that prohibiting medical marijuana use as a condition of probation constitutes cruel and unusual punishment, contrary to the United States Constitution and New Mexico Constitution. While a case will "present[] an issue of substantial public interest if it involves a constitutional question," *Republican Party of N.M.*, 2012-NMSC-026, ¶ 10, Defendant does not cite any authority indicating that a probation term barring the use of medical marijuana constitutes cruel and unusual punishment or, for that matter, that a probation term standing alone has ever been held to be cruel and unusual. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 (stating that "absent cited authority to support an argument, we assume no such authority exists"). To the contrary, the only case upon which Defendant relies merely supports the notion that *a term of incarceration* may be cruel and unusual in "exceedingly rare" situations if there is a showing of "deliberate indifference" to a defendant's "serious medical needs." *State v. Arrington*, 1993-NMCA-055, ¶ 10, 115 N.M. 559, 855 P.2d 133 (internal quotation marks and citation omitted); *see id.* ¶ 11 (observing that the district court did not err in finding

9

that incarceration constituted cruel and unusual punishment where the evidence was uncontroverted that incarceration was life-threatening considering the defendant's serious medical condition and the prison's inability to provide adequate medical care). In this case, however, the district court did not demonstrate a "deliberate indifference" to Defendant's medical needs. *See id.* ¶ 10. Rather, the district court judge merely required Defendant to "talk to [his] doctor and get some other remedy for whatever that addresses." In any event, the district court had wide discretion to fashion reasonable probation terms in light of allegations that Defendant had been selling his medical marijuana, using other drugs, and utilizing medical marijuana containers to hold illegal drugs. *See generally State v. Garcia*, 2005-NMCA-065, ¶ 11, 137 N.M. 583, 113 P.3d 406 (noting that the district court has broad discretion to determine probation conditions).

{15} Next, with respect to whether the issue is capable of repetition yet evading review, Defendant contends that almost twenty thousand people in New Mexico have medical marijuana cards and that district courts will likely be confused about whether to ban medical marijuana as a term of probation because federal law bars marijuana use altogether. However, Defendant does not allege or provide any evidence demonstrating that this is indeed an issue or likely to become one in this state. As an initial matter, Defendant's argument amounts to mere speculation because he does not indicate, for example, how many people with medical marijuana cards are currently

or have ever been on probation. We fail to see any casual connection between the number of people who have medical marijuana cards and the likelihood that a probationary term denying marijuana use is likely to repeat itself. Defendant also does not cite a single case—from this state or any other jurisdiction—in which the denial of medical marijuana use as a term of probation was reversed as an abuse of the district court's discretion.

{16} We decline to extend a blanket rule that, because a large number of people have medical marijuana cards, a district court cannot prohibit its use as a term of probation, particularly when such terms are left to the discretion of the district court and are determined by the specifics of each case. *See id.* ("Conditions of probation are reasonably related to rehabilitation if they are relevant to the offense for which probation was granted." (internal quotation marks and citation omitted)). As we have noted, the district court "has broad discretion to effect rehabilitation and may impose conditions designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct." *Id.* (internal quotation marks and citations omitted). Although we do not reach the merits of Defendant's case, we emphasize that we generally defer to the district court's discretion in such matters and that in this case one of Defendant's previous probation violations included allegations that Defendant used a medical

11

marijuana container to hold illegal drugs, had tested positive for THC, opiates, and cocaine, possessed a scale, and was illegally selling his medical marijuana.

{17}     We disagree with Defendant that "this issue will probably only be appealed after it is too late . . . [and i]n the meantime, a large pool of people are subject to the possibility of being denied legislatively approved medical care due to illegal terms of probation." The maximum probation term in New Mexico is five years, NMSA 1978, § 31-20-5(A) (2003); therefore, aggrieved probationers have sufficient time to appeal conditions of probation before their case becomes moot. Thus, even if a probation term prohibiting medical marijuana occurs again, the issue is unlikely to evade review because this Court can, and often does, review conditions of probation while they are still in effect. *See, e.g.*, *Garcia*, 2005-NMCA-065, ¶ 11 (considering whether a condition of probation was reasonably related to a defendant's rehabilitation). Indeed, Defendant here was initially placed on five years of probation, and although the term prohibiting him from using medical marijuana was not imposed until later in his supervision, there was sufficient time for this Court to review a challenge to the district court's decision.

{18}     We do acknowledge, however, that Defendant initiated his appeal in June 2014 and that, therefore, it has taken approximately three years to come before this Court. While this time lapse was partially attributable to a variety of procedural delays, mainly involving his attorney, it does not alter our underlying mootness analysis. As

we said at the outset, Defendant's case is moot because Defendant completed his probation, and thus his appeal does not present an actual controversy for which this Court can provide any relief.

**{19}** Accordingly, we hold that the question whether the probation term prohibiting Defendant from using medical marijuana is illegal and unreasonable is moot and is neither an issue of substantial public interest nor capable of repetition yet evading review.

## Exclusion of a Witness From the Probation Violation Hearing

**{20}** On the remaining issues, Defendant argues that there are "collateral consequences to a probation violation." Specifically, Defendant states that "any action taken by a court will be posted on the internet and preserved forever. It can then be accessed and used by probation officers and district attorneys in determining conditions of release and sentencing." We are not persuaded.

**{21}** In this case, the initial hearing occurred May 30, 2013. Under Rule 5-805(I), Defendant was required to file a witness list no later than ten days after that hearing. However, Salazar did not file a witness list until December 4, 2013, which was the day before another probation violation hearing to which Salazar did not appear. Furthermore, Salazar failed to comply with the district court's oral order to make the witness available for an interview and later admitted that he did not respond to the State's request to set up an interview. Because Salazar did not meet the court's

13

deadline for making the witness available for an interview, the district court excluded the witness from testifying.

{22}     Defendant cites no legal authority supporting his proposition that there are collateral consequences when a district court excludes a defense witness during a probation violation hearing. As such, we assume none exists and will not consider Defendant's argument further. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists[.]"). The case that Defendant relies on for his argument, *State v. Sergio B.*, 2002-NMCA-070, ¶ 10, 132 N.M. 375, 48 P.3d 764, merely holds that appellate courts can review criminal convictions even after a term of incarceration has ended, not that a probation violation itself can cause collateral consequences. In any event, the purported collateral consequences that Defendant alleges are generally not the type sufficient to overcome mootness. *See id.* (explaining that "mandatory sentence increases for subsequent offenses, limitations on eligibility for certain types of employment, and voting restrictions" may defeat mootness).

{23}     Defendant's conclusory statement that "the erroneous exclusion of evidence . . . at probation hearings are likely to reoccur but evade review" is wholly undeveloped and we, therefore, decline to consider it. The mere assertion of a claim, without any citation to authority or reasoned argument, does not suffice for appellate review. *See*

14

*State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"). Nevertheless, we take a brief opportunity to note, as we did above, that we have no reason to believe that issues arising from probation violation hearings are likely to evade review considering this Court's history in reviewing matters related to such hearings. *See, e.g.*, *State v. Dinapoli*, 2015-NMCA-066, ¶ 34, 350 P.3d 1259 (discussing the district court's broad discretion in imposing probation terms aimed at rehabilitation and preventing additional criminal activity).

**Ineffective Assistance of Counsel**

{24}     We apply a de novo standard of review for ineffective assistance of counsel claims. *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. To evaluate such a claim, "we apply the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 . . . (1984)." *State v. Dylan J.*, 2009-NMCA-027, ¶ 36, 145 N.M.719, 204 P.3d 44. "That test places the burden on the defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced his defense." *Id.* Defense counsel's performance is deficient if his or her conduct falls below that of a reasonably competent attorney. *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494. A defendant is prejudiced if, as a result of the deficient

performance, "there was a reasonable probability that . . . the result of the [proceeding] would have been different." *Dylan J.*, 2009-NMCA-027, ¶ 38 (omission in original).

{25} Defendant argues that Salazar provided ineffective assistance of counsel because no objectively reasonable attorney would have failed to schedule the witness for interview. In particular, Defendant contends that Salazar "gave the State an opportunity to exclude an independent witness who could establish the veracity of [Defendant's] self-defense claims—which was the only theory put forward by the defense at the hearing[,]" and that Salazar's ineffectiveness prejudiced Defendant because the outcome of the hearing may have been different. Pursuant to *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant also alleges that Salazar was ineffective for failing to obtain the lapel camera video of the police officer who investigated the aggravated battery.

{26} Here, the district court orally ordered Salazar to make his witness available to the State for interview by December 5, 2014. However, Salazar did not comply with the order because he untimely filed the witness list on December 4 and did not make the witness available for interview by the district court's deadline. In fact, Salazar neglected to respond to the State's requests to interview the witness and admitted that was his fault. Although we generally presume an attorney's performance was reasonable, Salazar's own admissions contained in the record show that his failure to schedule the witness for interview was a result of mistakes or carelessness, not a

16

sound strategy. *See State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 ("We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks and citation omitted)). Salazar acknowledged, for example, that he "didn't want to do a lot of work if the witness wasn't going to show up anyway." He also conceded that he did not respond to the State's efforts to set up an interview because he does not have a system in place to respond to emails when he is out of the office. Therefore, Salazar's own statements demonstrate that his failure to schedule the witness for interview was not objectively reasonable, particularly because the witness would have allegedly corroborated Defendant's account of the aggravated battery incident.

{27} Because we have determined that Salazar provided deficient representation, our next task is to consider whether Defendant was prejudiced as a result of that inadequate performance. We are unable to conclude that the outcome of the probation violation hearing may have been different if Salazar made the witness available for interview. It is mere speculation to assert that the witness's testimony would have sufficiently corroborated Defendant's version of events without providing any indication of what that testimony might be or that the district court would have found the testimony credible. *See Jones v. Anderson*, 1970-NMSC-044, ¶ 7, 81 N.M. 423,

467 P.2d 995 (noting that it is the trier of fact's duty to weigh the credibility of witnesses). It is likewise speculative to assume that the witness's testimony would have altered the district court's decision, considering the other evidence presented by the State, which included, for instance, the investigating officer's testimony that he observed the alleged victim of the aggravated battery lying on the ground with injuries. And importantly, we note that there is no certainty that the witness would have testified even had Salazar made him available for interview. Accordingly, we hold that Defendant did not meet his burden to show that he was prejudiced by Salazar's failure to schedule the witness for interview.

{28} Lastly, we note that there are no facts in the record that would permit us to evaluate Defendant's argument that Salazar was ineffective for failing to obtain the lapel camera video. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (explaining that we can only review facts in the record). Defendant does not cite any facts in the record supporting his argument, and it is not this Court's job to do Defendant's work for him. *See State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (explaining that appellate courts are under no duty to search a record to determine whether an issue is preserved). In any case, the only place in the record we have located that references a lapel camera is Defendant's testimony that there was a lapel camera, and this sole reference is an inadequate evidentiary basis for reviewing an ineffective assistance of counsel claim on direct appeal.

**CONCLUSION**

{29}    For the reasons stated, we hold that Defendant's appeal is moot as to whether the probation term barring the use of medical marijuana was illegal and unreasonable and whether the district court abused its discretion in excluding Defendant's witness. Further, Defendant did not receive ineffective assistance of counsel.

{30}    **IT IS SO ORDERED.**


_____
                                    **LINDA M. VANZI, Chief Judge**

**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**HENRY M. BOHNHOFF, Judge**